IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Austin Convention and Visitors Bureau,<br><br>    Plaintiff,<br><br>v.<br><br>Nick Patrick Hayden, an individual,<br>VISIT ATX, an unregistered business,<br><br>    Defendant. | Civil Action No: 1:23-cv-00261<br><br>**JURY DEMAND REQUESTED** |

Plaintiff AUSTIN CONVENTION AND VISITORS BUREAU complains and alleges against Defendants NICK PATRICK HAYDEN and VISIT ATX (collectively "Defendants") as follows.

## THE PARTIES

1. Plaintiff Austin Convention and Visitors Bureau ("Plaintiff" or "Visit Austin") is a Texas corporation having a principal place of business at 111 Congress Ave, Suite 700, Austin, Texas 78701.

2. On information and belief, Defendant Nick Patrick Hayden is an individual residing at 614 South 1st Street, Apt. 263, Austin, Texas 78704.

3. On information and belief, Mr. Hayden owns and operates the unregistered business "Visit ATX" from the principal location of 614 South 1st Street, Apt. 263, Austin, Texas 78704.

## JURISDICTION AND VENUE

4. This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 *et seq*., and under the laws of the State of Texas. This Court has subject matter jurisdiction over the claims for federal trademark infringement, false designation of origin, and unfair competition, pursuant to 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331, 1332, 1338,

and 1367. The Court has subject matter over the related Texas state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

5. Visit Austin is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because they have extensive contacts with, and conduct business and Defendants Visit ATX and Mr. Hayden are domiciled within, the State of Texas and this judicial district; Defendants have caused their VISIT ATX goods and services to be advertised, promoted, and sold in this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because Defendants have extensive contacts with, and conduct business and Defendants Visit ATX and Mr. Hayden are domiciled within, the State of Texas and this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

## FACTUAL BACKGROUND

### Visit Austin's Business and VISIT AUSTIN® Trademarks

7. Visit Austin is charged with marketing the city of Austin, Texas nationally and internationally as a premier business and leisure destination.

8. Since Visit Austin was created in 2009, Austin, Texas has received numerous awards, including being named the "Best City to Live" three years in a row by the Daily Mail, and being voted the #11 "Best Cities in America" by Travel + Leisure in 2022. Austin, Texas-located restaurants and hotels have also been featured in numerous publications such as *Condé Nast*, the

*New York Times*, *Time Magazine*, and *Bon Appetit*, and received various awards, including the 2022 James Beard Foundation Award.

9. Since at least as early as January 2009, Visit Austin has continuously and exclusively used, throughout the United States, the standard character word mark VISIT AUSTIN and the stylized mark ![Visit Austin logo] in connection with various services relating to promoting local business, tourism and recreation in Austin, Texas.

10. In addition to its fourteen years of common law rights, Visit Austin also owns federal trademark registrations with the United States Patent and Trademark Office ("USPTO") for its VISIT AUSTIN and ![Visit Austin logo] marks in connection with services relating to promoting local business, tourism and recreation in Austin, Texas, specifically:

> <u>IC 035</u>: Promoting of conventions and tourism in Austin, Texas; Rental of advertising space, and preparing and placing advertisements for others; Distribution of advertising materials in the nature of printed material; Digital advertising services; Advertising agencies specializing in experiential marketing programs; Convention and visitors bureau services, namely, promoting business, tourism and the holding of conventions in the Austin, Texas area; Promoting sports events of others and sports venues of others; Promoting sports events of others; Convention and visitors bureau services, namely, promoting the holding of conventions in the Austin, Texas area; Market analysis and research services; Promoting public interest and awareness of business, cultural, social, historical, governmental, economic, and entertainment opportunities and benefits in and around the Austin, Texas area; Promoting recreation and tourism in the Austin, Texas area; Providing consumer information services and making referrals in the field of entertainment services for products, services, events, activities, facilities and locations; Providing consumer information and related news in the field of goods and services manufactured in, made in, offered in, or otherwise associated with Austin, Texas; Providing information and news in the field of business; Providing an on-line searchable database featuring business information and business contacts; Special event planning for commercial, promotional or advertising purposes; Promoting a series of films of others; Promoting the concerts of others; Advertising, marketing and promotion services; Advertising, marketing and promotion services in the field of entertainment; Online advertising and promotional services, namely, providing

3

marketing and promotion of special events; Advertising, marketing and promotional services related to a broad range of industries for the purpose of facilitating networking and socializing opportunities for business purposes; Promoting, advertising and marketing of the brands, products, services and online websites of individuals, businesses and nonprofit organizations

<u>IC 039</u>: Providing information, news and commentary in the field of travel; Providing an on-line searchable computer database featuring information on travel; Travel guide and travel information services

<u>IC 043</u>: Providing information and advice on hotels and restaurants to tourists and business travelers

(Registration Nos. 6,922,008 and 6,922,009) (collectively the "VISIT AUSTIN® Marks and "VISIT AUSTIN® Registrations"). The services identified above are collectively referred to herein as the "VISIT AUSTIN® Services." Attached hereto as **Exhibit 1** are true and correct copies of the Certificates of Registration for the VISIT AUSTIN® Registrations.

11. Visit Austin owns and operates a website under the domain <austintexas.org>, at which Visit Austin markets, promotes and provides the VISIT AUSTIN® Services under the VISIT AUSTIN® Marks. Attached hereto as **Exhibit 2** is a true and correct copy of screenshots of the <austintexas.org> website.

12. Visit Austin also owns the domain name <visitaustin.com>, which redirects to Visit Austin's <austintexas.org> website.

13. Visit Austin also owns and operates various social media pages, including but not limited to Facebook, Instagram, TikTok, Pinterest, Twitter, YouTube, and Spotify, through which Visit Austin uses the VISIT AUSTIN® Marks to market, promote, and provide the VISIT AUSTIN® Services. Attached hereto as **Exhibit 3** are true and correct copies of screenshots of Visit Austin's social media pages.

14.     Due to Visit Austin's many years of prior use of the VISIT AUSTIN® Marks, the VISIT AUSTIN® Marks have acquired distinctiveness, and thus, are entitled to the highest degree of protection under the law.

15.     The VISIT AUSTIN® Registrations, which are valid, subsisting, unrevoked, and uncancelled, constitute *prima facie* evidence of the validity of the VISIT AUSTIN® Marks and conclusive evidence of Visit Austin's exclusive right to use the marks in commerce in connection with the services covered by the VISIT AUSTIN® Registrations. The VISIT AUSTIN® Registrations also constitute constructive notice to Defendants of Visit Austin's ownership, and prior and exclusive rights in the VISIT AUSTIN® Marks.

16.     As a result of Visit Austin's widespread, continuous, and exclusive use of the VISIT AUSTIN® Marks, and the substantial consumer recognition generated by Visit Austin's extensive advertising, marketing, and promotional activities, the trade and consuming public have come to recognize and exclusively associate the VISIT AUSTIN® Marks with Visit Austin as the source or origin of the VISIT AUSTIN® Services, and an indicator of high quality and trustworthy services offered by Visit Austin.

17.     Consequently, Visit Austin has acquired a significant amount of goodwill in the VISIT AUSTIN® Marks, and the VISIT AUSTIN® Marks have become a valuable symbol of Visit Austin's goodwill.

### Defendants' Unauthorized Use of the VISIT ATX Mark

18.     On or about January 4, 2021, Defendants, without authorization or permission from Visit Austin, and twelve years after Visit Austin first used the VISIT AUSTIN® Marks, first used the mark VISIT ATX (the "VISIT ATX Mark") in connection with tourism and informational services.

19. Defendants have continued, and today still use, the VISIT ATX Mark to offer tourism and informational services.

20. Defendants describe "Visit ATX" as "an independently run tourism lifestyle brand in Austin, Texas."

21. On information and belief, Defendants provide information on hotels, music venues, restaurants, and the like to visitors of Austin, Texas, under the VISIT ATX Mark.

22. The acronym ATX is the well-known shorthand or abbreviation for Austin, Texas. Attached hereto as **Exhibit 4** is a true and correct copy of a screenshot of the urbandictionary.com definition for ATX.

23. On information and belief, Defendants have owned and operated, and, in some instances continue to own and operate, websites and social media pages through which Defendants provide tourism and informational services about Austin, Texas under the VISIT ATX Mark.

24. On information and belief, Defendant Nick Hayden owns the domain name <visitatx.us>. Attached hereto as **Exhibit 5** is a true and correct copy of a screenshot of the WHOIS registration for the <visitatx.us> domain name.

25. On information and belief, Defendant Hayden has used the <visitatx.us> domain name to provide tourism and informational services about Austin, Texas, and to promote Defendants' services, under the VISIT ATX Mark. Attached hereto as **Exhibit 6** is a true and correct copy of archive.org screenshots of the visitatx.us website.

26. On information and belief, Defendants have used the website <visitatx.us> to offer tourism and informational services under the VISIT ATX Mark through, at least, December 5, 2022. *See* Exhibit 6.

27. On information and belief, Defendants own the Instagram page @visitatx_.

28. On information and belief, Defendants have used and continue to use the Instagram page @visitatx_ to provide tourism and informational services about Austin, Texas, and to promote Defendants' services, under the VISIT ATX Mark. Indeed, the @vistatx_Instagram page identifies Nick P. Hayden as the founder. Attached hereto as **Exhibit 7** is a true and correct copy of screenshots of Defendants' @visitatx_ Instagram page.

29. On information and belief, Defendants own the TikTok page @visitatx.

30. On information and belief, Defendants have used and continue to use the @visitatx Tik Tok page since at least as early as January 4, 2021 to provide tourism and informational services about Austin, Texas under the VISIT ATX Mark. Attached hereto as **Exhibit 8** is a true and correct copy of screenshots of Defendants' @visitatx TikTok page.

31. On information and belief, Defendants own the YouTube channel @VisitATX.

32. On information and belief, Defendants have used and continue to use the @VisitATX YouTube channel since at least as early as August 8, 2021 to provide tourism and informational services about Austin, Texas, and to promote Defendants' services, under the VISIT ATX Mark. Attached hereto as **Exhibit 9** is a true and correct copy of screenshots of Defendants' @VisitATX YouTube channel.

33. On information and belief, Defendants own the Twitter page for @visitatx_.

34. On information and belief, Defendants have used the @visitatx_ Twitter page since at least as early as March 2020 to provide tourism and information services about Austin, Texas, and to promote Defendants' services, under the VISIT ATX Mark. Attached hereto as **Exhibit 10** is a true and correct copy of screenshots of Defendants' @visitatx_ Twitter page.

35. On information and belief, Defendants own the LinkedIn page for Visit ATX.

36. On information and belief, Defendants have used and continue to use the Visit ATX LinkedIn page to provide tourism and informational services about Austin, Texas, and to promote Defendants' services, under the VISIT ATX Mark. Attached hereto as **Exhibit 11** is a true and correct copy of screenshots of Defendants' VISIT ATX LinkedIn page.

37. On March 1, 2022, counsel for Visit Austin sent a cease and desist letter to Defendants demanding that they cease all use of the VISIT ATX Mark. Attached hereto as **Exhibit 12** is a true and correct copy of Visit Austin's March 1, 2022 demand letter.

38. On March 2, 2022, Defendant Nick Hayden ("Defendant Hayden"), on behalf of Visit ATX, responded to Visit Austin's letter stating that he "intend[s] to coexist peacefully with Visit Austin," that he was meeting with legal counsel, and that he would "follow up with the next steps to address the 'unauthorized use' of VISIT ATX." Attached hereto as **Exhibit 13** is a true and correct copy of email correspondence between Defendants and Visit Austin's counsel, dated March 1, 2022 through January 23, 2023.

39. After not receiving any further correspondence from Defendants, Visit Austin's counsel reached out to Defendant Hayden on March 9, 2022 asking for an update. *See* Exhibit 12.

40. Defendant Hayden responded he had been briefed by his legal team, that he chose not to "bother" his lawyer with Visit Austin's demand that week, and preferred to have a call with Visit Austin's counsel himself. *See* Exhibit 13.

41. Given ethical constraints, Visit Austin's counsel told Defendant Hayden that he could not have a direct phone call with Visit Austin's counsel without Defendants' counsel's consent. *See* Exhibit 13.

42. In response, Defendant stated that he would introduce Visit Austin's counsel to his attorneys *if* Visit Austin's counsel introduced Defendant Hayden to Visit Austin's President and CEO, Tom Noonan. *See* Exhibit 13.

43. Visit Austin's counsel stated that Mr. Noonan was willing to have an in-person meeting with both parties' counsel present, and suggested a date for the meeting. Visit Austin's counsel also, again, asked Defendants to provide their attorneys' contact information. *See* Exhibit 13.

44. On April 19, 2022, Defendant Hayden stated that he was dealing with personal family matters, and that since his last email with Visit Austin's counsel had not posted any content under the VISIT ATX Mark. Defendant further stated that he would be happy to meet in person with Tom Noonan if he "would directly acknowledge that he supports this Cease & Desist." *See* Exhibit 13.

45. On April 25, 2022, Visit Austin's counsel wrote to Defendants stating "Tom Noonan fully supports this Cease and Desist, yes, he wants you to stop using Visit ATX. Please confirm that you'll do so, again, happy to speak with your attorney, if you have one representing you in this matter." *See* Exhibit 13.

46. Visit Austin did not hear back from Defendants.

47. On information and belief, Defendants removed the website at <visitatx.us> and the Instagram page for @visitatx_ on or after April 25, 2022.

48. However, Defendants have continued to advertise and provide tourism and informational services under the VISIT ATX Mark online on TikTok, Twitter, YouTube, and LinkedIn. *See* Exhibits 7-11.

49. On January 23, 2023, Visit Austin sent Defendants another email demanding, again, that they cease all use of the VISIT ATX Mark, and asked Defendants to confirm in writing by no later than January 30, 2023 that they would do so. *See* Exhibit 13.

50. To date, Visit Austin has not received any response from Defendants, and Defendants continue to use the VISIT ATX Mark in connection with tourism and informational services without Visit Austin's consent.

51. As a result of Defendants ongoing, willful unauthorized use of the VISIT ATX Mark without Visit Austin's consent, consumers are likely to be confused as to the source, affiliation, or sponsorship of the tourism and informational services offered by Defendants and thus Visit Austin has suffered damage and irreparable harm to its reputation and goodwill.

**Defendants' Unlawful Registration and Use of the <visitatx.us> Domain Name**

52. On or about January 3, 2021, Defendant Hayden registered the <visitatx.us> domain name through the domain name registrar GoDaddy. *See* Exhibit 5.

53. The WHOIS information identifies Nick Hayden, as the registrant of the <visitatux.us> domain name.

54. On information and belief, Defendants Visit ATX and Hayden own, and at one time operated a tourism and informational website about Austin, Texas which was posted on the <visitatx.us> domain name at the URL www.visitatx.us (the "Infringing Website").

55. The Infringing Website was taken down after Visit Austin's counsel sent the March 1, 2022 demand letter to Defendants.

56. On information and belief, Defendants have used, and in the future intend to use, the VISIT ATX Mark to capitalize upon the goodwill associated with Visit Austin's well-known trademarks in order to divert unknowing customers of Visit Austin to the Infringing Website.

57. The services offered on the Infringing Website are tourism and information services relating to Austin, Texas, the exact same services that Visit Austin provides under the VISIT AUSTIN® Marks.

58. Defendants are in no way affiliated with Visit Austin and have not received permission or authorization to use the <visitatx.us> domain and/or any of the VISIT AUSTIN® Marks.

59. As a result of Defendants' operation of an active website offering and providing tourism and informational services relating to Austin, Texas under the confusingly similar VISIT ATX Mark, consumers are likely to be confused as to the source, affiliation, or sponsorship of the goods offered by Defendants and thus Visit Austin has suffered damage and irreparable harm to its reputation and goodwill.

**FIRST CAUSE OF ACTION**
**(Willful Federal Trademark Infringement Under 15 U.S.C. § 1114 Against All Defendants)**

60. Visit Austin realleges and reincorporates herein the allegations contained in paragraphs 1-59 of this Complaint.

61. Visit Austin has priority in use and registration over the VISIT ATX Mark as Visit Austin first used the VISIT AUSTIN® Marks in at least as early as January 2009, approximately twelve years before Defendants first used the infringing VISIT ATX Mark.

62. Defendants have used and continue to use the VISIT ATX Mark in Austin, Texas, the same geographic location in which Visit Austin uses the VISIT AUSTIN® Marks.

63. Like Visit Austin's VISIT AUSTIN® Marks, the dominant word in Defendants' VISIT ATX Mark is "visit."

64. Like the word "Austin" in the VISIT AUSTIN® mark, the word ATX in Defendants' VISIT ATX Mark means Austin, Texas.

65. On information and belief, the acronym ATX is well known by consumers to mean Austin, Texas.

66. Defendants' tourism and informational services in Austin, Texas are identical, closely related to, overlap with, and/or are of the type that come from the same source as the VISIT AUSTIN® Services.

67. Defendants' use of the VISIT ATX Mark for their tourism and informational services relating to Austin, Texas is likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of Defendants' services in that the trade and the consuming public are likely to believe that Defendants' services are provided, sponsored, approved, or licensed by Visit Austin, or that Defendants are affiliated, associated, or otherwise legitimately connected with Visit Austin when they are not.

68. Defendants were on notice of Visit Austin's rights since at least as early as March 1, 2022, the date Visit Austin sent Defendants a demand letter putting Defendant on actual notice of Visit Austin's rights. Despite having actual knowledge of Visit Austin's trademark rights, Defendants have continued to advertise, offer, and provide tourism and information services under the VISIT ATX Mark.

69. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the VISIT ATX trademark, in commerce to advertise, promote, market, and provide tourism and information services related to Austin, Texas throughout the United States, including in Austin, Texas, constitute willful trademark infringement in violation of 15 U.S.C. § 1114.

70. The actions of Defendants, if not enjoined, will continue. Visit Austin has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other

things, diminution in the value of and goodwill associated with the VISIT AUSTIN® Marks, and injury to Visit Austin's business. Visit Austin is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

71. Pursuant to 15 U.S.C. § 1117, Visit Austin is entitled to recover damages in an amount to be determined at trial, including profits made by Defendants on the sales of VISIT ATX services, and the costs of this action. Furthermore, Visit Austin is informed and belief, and on that basis alleges, that the actions Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Visit Austin to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### (Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a) Against All Defendants)

72. Visit Austin realleges and incorporates herein the allegations contained in paragraphs 1-71 of this Complaint.

73. Visit Austin has priority in use and registration over the VISIT ATX Mark as Visit Austin first used the VISIT AUSTIN® Marks in at least as early as January 2009, approximately twelve years before Defendants first used the infringing VISIT ATX Mark.

74. Defendants have used and continue to use the VISIT ATX Mark in Austin, Texas, the same geographic location in which Visit Austin uses the VISIT AUSTIN® Marks.

75. Like Visit Austin's VISIT AUSTIN® Marks, the dominant word in Defendants' VISIT ATX Mark is "visit."

76. Like the word "Austin" in the VISIT AUSTIN® mark, the word ATX in Defendants' VISIT ATX Mark means Austin, Texas.

77. On information and belief, the acronym ATX is well known by consumers to mean Austin, Texas.

78. Defendants' tourism and informational services in Austin, Texas are identical, closely related to, overlap with, and/or are of the type that come from the same source as the VISIT AUSTIN® Services.

79. Defendants' use of the VISIT ATX Mark for their tourism and informational services relating to Austin, Texas are likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of Defendants' services in that the trade and the consuming public are likely to believe that Defendants' services are provided, sponsored, approved, or licensed by Visit Austin, or that Defendants are affiliated, associated, or otherwise legitimately connected with Visit Austin when they are not.

80. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the VISIT ATX trademark, in commerce to advertise, promote, market, and provide tourism and information services related to Austin, Texas throughout the United States, including in Austin, Texas, constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

81. As an actual and proximate result of Defendants' willful and intentional actions, Visit Austin has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Visit Austin will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

82. Pursuant to 15 U.S.C. § 1117, Visit Austin is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on the sales of VISIT ATX services, as well as recover of the costs of this action. Furthermore, Visit Austin is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling

Visit Austin to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION
### (Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) Against All Defendants)

83. Visit Austin realleges and reincorporates herein the allegations contained in Paragraphs 1-82 of this Complaint.

84. The VISIT AUSTIN® Marks were distinctive or famous at the time of registration of the <visitatx.us> domain name on January 3, 2021.

85. Defendants have a bad faith intent to profit from the registration and use of the Internet domain name <visitatx.us> by creating an erroneous association with Visit Austin's VISIT AUSTIN® Marks in the minds of consumers.

86. Defendants have a bad faith intent to divert customers from Visit Austin's website located at the URLs www.visitaustin.com and www.austintexas.org to a site accessible under a domain name that could harm the goodwill represented by the VISIT AUSTIN® Marks for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Website.

87. The acts of Defendants, as complaint of herein, have caused irreparable injury and damage to Visit Austin, and, unless restrained, will continue to do so.

88. Visit Austin has no adequate remedy at law.

89. Visit Austin has suffered and continues to suffer damage to its reputation and goodwill and economic loss directly and proximately caused by the acts of Defendants alleged herein.

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

90. Visit Austin realleges and incorporates herein the allegations contained in paragraphs 1-89 of this Complaint.

91. Visit Austin has priority in use and registration over the VISIT ATX Mark as Visit Austin first used the VISIT AUSTIN® Marks in at least as early as January 2009, approximately twelve years before Defendants first used the infringing VISIT ATX Mark.

92. Defendants have used and continue to use the VISIT ATX Mark in Austin, Texas, the same geographic location in which Visit Austin uses the VISIT AUSTIN® Marks.

93. Like Visit Austin's VISIT AUSTIN® Marks, the dominant word in Defendants' VISIT ATX Mark is "visit."

94. Like the word "Austin" in the VISIT AUSTIN® mark, the word ATX in Defendants' VISIT ATX Mark means Austin, Texas.

95. On information and belief, the acronym ATX is well known by consumers to mean Austin, Texas.

96. Defendants' tourism and informational services in Austin, Texas are identical, closely related to, overlap with, and/or are of the type that come from the same source as the VISIT AUSTIN® Services.

97. Defendants' use of the VISIT ATX Mark for their tourism and informational services relating to Austin, Texas are likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of Defendants' services in that the trade and the consuming public are likely to believe that Defendants' services are provided, sponsored, approved, or licensed by Visit Austin, or that Defendants are affiliated, associated, or otherwise legitimately connected with Visit Austin when they are not.

98.     The actions of Defendants described above and specifically, without limitation, their unauthorized use of the VISIT ATX trademark, in commerce to advertise, promote, market, and provide tourism and information services related to Austin, Texas throughout the United States, including in Austin, Texas, constitute unfair competition under the common laws of the State of Texas.

99.     As an actual and proximate result of Defendants' willful and intentional actions, Visit Austin has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Visit Austin will continue to suffer irreparable harm and damage to its business, reputation, and goodwill. Visit Austin is entitled to damages and injunctive relief against Defendants under the common laws of the State of Texas.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants as follows:

A.     That Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be permanently enjoined and restrained from:

1.     using the VISIT ATX Mark, or any mark confusingly similar to the VISIT AUSTIN® Marks, in connection with the production, importation, shopping, distribution, marketing, promotion, advertising, offering for sale, or sale of any goods or services, including but limited not tourism and informational services;

2.     applying for, seeking to register, registering, renewing, or maintaining any trademark, trade name, service mark, company name, or domain name consisting, in whole or in

part, of the VISIT ATX Mark, or any name confusingly similar to the VISIT AUSTIN® Marks with any governmental agency, office, or other authority, anywhere in the world; and

   3. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (1) and (2);

 B. That Defendants file, within ten (10) days from the entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction

 C. That Defendants be adjudged to have violated 15 U.S.C. § 1114 by infringing the VISIT AUSTIN® Marks;

 D. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Visit Austin by using false designations of origin as to the source, origin, or sponsorship of Defendants' tourism and informational services;

 E. That Defendants be adjudged to have violated 15 U.S.C. § 1125(d) by willfully engaging in cybersquatting through their registration and use of the <visitatx.us> domain name;

 F. That Defendants be adjudged to have violated the common laws of the State of Texas by unfairly competing against Visit Austin by using false designations of origin as to the source, origin, or sponsorship of Defendants' tourism and informational services;

 G. That Visit Austin shall be entitled to restitutionary disgorgement from Defendants;

 H. That Defendants and any principals, agents, servants, employees, successors and assigns of and all those in privity or concert with Defendants who receive actual notice of said order, deliver up for destruction all infringing products and all promotional, advertising, and any other printed materials and items of any kind bearing the VISIT ATX Mark or any other name or mark that is confusingly similar thereto;

  I.  That ownership of the domain name <visitatx.us> be transferred to Visit Austin;

  J.  That Defendants remove the infringing website located at the URL www.visitatx.us and all content related to all products, services, advertisements, promotions, and all other matter in custody or under the control of Defendants that bear the VISIT ATX Mark or any other mark that is likely to be confused with the VISIT AUSTIN® Mark;

  K.  That Defendant Hayden be found liable in his individual capacity, jointly and severally with Defendant Visit ATX, for all harm and damages sustained by Visit Austin as a result of Defendants' unlawful conduct, including liability for all forms of relief and remedies available to Visit Austin under the Causes of Action in this Complaint;

  L.  That Visit Austin be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' act of trademark infringement, false designation of origin, and unfair competition;

  M.  That Visit Austin be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' act of trademark infringement, false designation of origin, and unfair competition;

  N.  That Visit Austin be awarded Defendants' profits derived by reason of said acts, or as determined by an accounting;

  O.  That such damages and profits be trebled and awarded to Visit Austin and that it be awarded costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

  Q.  That Visit Austin be granted prejudgment and post judgment interest;

  R.  That Visit Austin be granted costs associated with the prosecution of this action; and

S.    That Visit Austin be granted such further relief as the Court may deem just.

Dated: March 9, 2023        Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Emily W. Collins*
Emily W. Collins
Texas Bar No. 24099185
300 West 6th Street, Suite 2050
Austin, Texas 78701
Email: emily.collins@gtlaw.com
Telephone: 512.320.7274
Facsimile: 512.320.7210

and

Stephen R. Baird* (*pro hac vice* application forthcoming)
Molly R. Littman* (*pro hac vice* application forthcoming*)*
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Email: bairds@gtlaw.com
Email: molly.littman@gtlw.com
Telephone: 612.259.9700

*Counsel for Plaintiff*